hadassah, the Women's Zionist Organization, No. 19-1478. Good morning, Your Honor. Good morning. Why don't you just take a minute until everyone's settled. Lift it way up. I'm used to that. All right. Very good. Good morning, Your Honor. Eric Ashkenazi on behalf of Appellant Hadassah Academic College, or HACC for short. And if I could request two minutes of rebuttal time. Sure. Thank you. This is an appeal about standing. The district court held that HACC did not have a special interest in the funds at issue here, and therefore HACC lacked standing because, quote, HACC is not expressly designated as a beneficiary of Hadassah in Hadassah's chartering documents, and as such, HACC has no special interest in Hadassah's funds sufficient to confer standing. The district court's exclusive focus on Hadassah's chartering documents, such as its Constitution or Certificate of Incorporation, to determine whether HACC has a special interest here conflicts with New York law and constitutes reversible error. The Seminole Court of Appeals case concerning this issue is not overboard. Okay. But is it the case that there is discretion and, therefore, under another rule under the New York exception that they made to only the attorney general has standing, that you would lose on that rule on the notion that whether they give money to you is a matter of discretion, because, in fact, the document for tax reasons says that the opposing side has full discretion? So, Your Honor, there are perhaps some gifts where Hadassah has discretion, but there are many others where it does not. There are many, for example, wills and other donative agreements where Hadassah told the donor and expressly said to the donor, and we've cited to it in our brief, where they acknowledge the money must be used for HACC. For example, Hadassah has internal records, which they produced in discovery, which was short-circuited with the Court's dismissal below, but the discovery was in the ---- Let me just make myself clear. Isn't this really a question of New York policy, of whether New York wants the exception which they made in ARCO to apply to this peculiar situation where nominally there is discretion and where all the donors expect that the money will be given because the discretion is only put in for federal tax purposes? And I have no idea, and the New York cases don't really tell me, whether New York wants its exception to apply there or not. So isn't this a perfect case to certify to New York and let New York decide what it wants to do in this situation? Your last note in your brief says, if you don't want to decide for us, certify, but I don't know why that doesn't come earlier even. Yes, Your Honor. I think this would be an appropriate case to certify to the Court of Appeals. However, I'm not sure it's necessary because if you look at the decision in ARCO Bravor, and I want to quote the language to make sure I get it right, when a particular group of people has a special interest in funds held for a charitable purpose, as when they are entitled to a preference in the distributions of such funds, and the class of potential beneficiaries is sharply defined and limited in number, a special interest exists. So how do we know that they're limited in number? I understood that Hadassah and its related organizations receive donations for all kinds of purposes, and which may include other beneficiaries ultimately. That's why people, courts have typically looked at foundational documents, and in the Zagirtic case, they looked at, in addition, because it was a one-to-one correspondence, the historical society and the foundation there. That creates a special and very limited class. What has concerned me here is that there may be numerous other designees of prospective beneficiaries that are getting kind of funneled through Hadassah to distribute presumptively as directed by the donee or even more directively by the donee. But you're not alone in that. HEC is not alone in that. There are a lot of different donees. And that's precisely why the attorney general is designated by the legislature to protect beneficiaries and to make sure that trusts and charitable organizations are behaving in the public interest and are protecting donors. I mean, no donors are part of this suit, right, who claim that they've been misled. And have you applied to the attorney general for protection? And has that been dismissed? We have not applied to the attorney general. But to be clear, and I want to make it very clear to this court, what funds we are seeking. We are not seeking all of Hadassah's general funds. It's only funds that are specifically donated by donors. But my point is that there may be numerous other beneficiaries who, like you, have expectations based on the donors and are using Hadassah as an umbrella organization to sponsor various preferred kind of subcharities or purposes. That's having represented a large charitable institution being Yale University over some time, I've seen every kind of donative instrument and will that expresses such an interest. And my understanding is that Hadassah, with its related medical organization and so on, is just such an organization that will have donors with particular projects, either in Israel or here, that donors want to use Hadassah, which has staying power, which they can be sure will be there in 10 years or 15 years. I don't see what distinguishes HAC from those other potential beneficiaries. And that's why I'm having trouble applying New York, the case law, to your situation as a specially defined class of preferees, I guess, preference holders. So perhaps an example would help. Mrs. Goldberg goes to Hadassah and says to Hadassah, I want to set up a fund, an endowment fund for scholarships at HAC. They enter into an agreement which specifically says Hadassah will set up and send the money to HAC for scholarships to be used for students at HAC. Hadassah tells Mrs. Goldberg, your money is going to be used for HAC. We, for example, have one email. Isn't that precisely the kind of promise, though, that the Attorney General is positioned to do, to enforce and has a duty to enforce? A lot of donors make such requests or even enter into donative agreements of that sort. Have you, can you tell me that there are none others other than HAC as to which donors to Hadassah have expressed such a preference? Well, I can tell you that with respect to these specific funds, the only entity that would be entitled to them is HAC. But that isn't my question. My question is, my belief is that there are many other such entities or individuals who have expectations of receiving a preference in money funneled through Hadassah. And you need to show that you're a special class. That's why traditionally people have looked at the foundational documents where there's such a tight interaction between one organization and the other that has caused the courts to recognize standing. So tell me again why you're different. With respect to the foundational documents, we cite in our briefs court decisions from the appellate division of the New York State Court as well as the New York State Supreme Court, where it's not just in the foundational documents where a special interest can be created. A special interest can be created in other ways as well. And ultimately you need to look back at the language of Alko Gravore. And, again, that's what I was talking about with the decision in Sagtikos. That was, in essence, a refoundation of the organization later on. So it is a kind of transaction that's unlike a mere gift agreement that you have been pointing to. But go ahead, Judge Calabresi. I would like to come back to the question of discretion, because you cite me Arko and say there's no discussion of that in quite that way. And yet the appellate division in Nassar v. Columbia suggests that discretion of that sort is enough so that the Arko exception doesn't apply. Now, there's a Supreme Court decision in New York which goes the other way. But that just suggests to me how totally confused this area is in New York. Not that there is another reason, as you said, why it would be okay. But to the extent it is confused, I agree with Your Honor's original assumption that we should certify this. However, I do think that Trusco and Swift, the Supreme Court case that Your Honor was just referring to, I believe, both stand for the proposition that ultimately what you need to look at is who has a special interest in these funds and if there is a narrow group of people who can lay claim to them. In this case, we submit that that would be hack. And, again, that's something that Hadassah itself has acknowledged. For example, we cite to the notes that are handwritten on some of these gift agreements by Hadassah's general counsel, where she wrote, must use for hack, have to use for hack. And we cite again to e-mails where Hadassah's national treasurers telling donors who are asking, why are our funds not going to hack, don't worry, we're very careful, and this is not an exact quote, I can get it, but we're very careful to make sure all the funds donated to hack get to that institution. Very good. I think we have the arguments and you have two minutes for rebuttal. Thank you, Your Honor. Okay, we'll hear from Mr. Knuth. I'm not as tall. May it please the Court, I'm Dan Kurtz, a partner at the Prior Cashman Law Firm. We represent the defendant, Apolli Hadassah, the Women's Zionist Organization of America. I'd like to begin by saying I think New York, in fact, has pretty clear law on this issue as to who has standing, and that standing is based exclusively on the foundational document of the organization. Where do you find a case that says that, other than that one appellate division decision? That's the only one. That Alco Graveyards, the Court's discussion of the exception, is based on Alco Graveyards' corporate purpose in the legislative act, the charter. Yeah, but other courts, other than that appellate division, have looked to what was in the will, have looked to other things, so that it's hard for me to see that this appellate division decision has actually been followed uniformly in New York. There are two cases, and I can discuss them, which the plaintiff here relies on, which are the Trusco cases and the Swift case. I think neither of them have any real precedential value. The Trusco cases, as described by the Schenectady County surrogate himself. That's the hospital case, right? Yeah. Arose out of what are really unique circumstances, and that happens in every area of the law. You have a general rule. Sometimes there's a case that's so extraordinary you need to bend it a little. So what happened in Trusco is the governor, then governor, appointed Stephen Berger as kind of the czar of health care, and he went around the state closing hospitals to make the delivery of health care services more economical. Schenectady County had two hospitals, one St. Clair's, one Ellis Hospital. He closed St. Clair's. It shut its facility. Ellis took over the facility under this mandate. Operations and everything else. Trusco Bank had long held charitable funds for St. Clair. St. Clair's wasn't up. Where in ARCO is there this requirement that this be in the charter? Well, because that's where they found the purpose in the case. No, they found, they talked about purpose, but the charter notion is something that is in one appellate division case. And that, is that sufficient to bind us to make clear what the law of New York is? Let me say, there are other compelling reasons to locate the foundational document as a source of this interest. I think Your Honor expressed some of those. I've had a lot of experience in reviewing endowments of large and small clients to see are they complying with the terms of the gift instruments. You're talking about, in many cases, large research institutions, universities, hospitals, thousands of separate gifts. We're on a 12B1 dismissal, so we can't look far outside the record, but does the record There are numerous documents that could be seen to create a foundational interest, and it would be a nightmare to have to parse through that. And often, they're inaccurate and incomplete. The foundational interest in the governing instruments is always available. May I just ask a technical question? This case is in Federal court because of diversity, I take it. Yes. Who brought it into Federal court? It was the plaintiff. You brought it? We're defendants. We're defendants. Hadassah's a defendant. We didn't bring it into Federal court. No. So the other side brought it into Federal court rather than in State court. Yes. So what I'm saying is you have insuperable obstacles if you locate the foundational interest in anything else. So, sorry. Just a second. So in terms of what record we can consider, this was dismissed for want of standing, right? Yes. And was there any hearing below or any fact-finding about nothing? So we just have the allegations of the complaint. And the other case that the plaintiffs appear to rely on is the Swift case. The Swift case, I think, is just plain wrong. It's exactly the kind of thing you were talking about, Your Honor. Swift was, I guess, a physician at New York Medical College. Well, what are we to do with State cases that you tell us are wrong? I mean, we're a Federal court. We're supposed to try to figure out what New York law is. And you come in and tell us this case in New York is right and this case in New York is plain wrong. And, you know, I am quite ready to say that most of New York law is wrong, but I don't know that I have any particular basis for that. I think the authority, both of the Court of Appeals case in Alco Graveyard and the SACTICOS case, I don't have any particular basis for saying what's right and what's wrong. But Trusco and the SACTICOS case look beyond the chartering, the foundation or I guess the Trusco case does. Right. The Trusco case looks to the contract. But it seems to me, again, those were, yes, those are special circumstances, but these could be special circumstances as well. Well, these aren't special circumstances because Mr. Ashkenazi is talking simply about gift instruments, wills and other items. What's concerning me, though, is that as my questions indicated, I would expect that factual development were any to occur on this standing issue would reveal that your client has many different donors, many different agreements with different entities regarding how it receives and what it does with the charitable funds that it holds. And to establish standing and reject the Attorney General's sole position or position as sole enforcer, your adversary needs to show that they're a special class, an exceptional class. It seems to me that they can look at a number of different documents to do that, but we don't have a record that enables us to go very far to show how they're distinguished from other people. So it may turn out that with some factual development on this question, they do not fall within the Alcoa-Grover class or exception. Or it may turn out that, on the contrary, they're more like Trusco. But we can't tell on this record. It seems to me that the Trusco cases are so obviously unique. There's not a burger commission every 5 or 10 years that mandates closing of hospitals and that resulted in one hospital surviving. In fact — But you can have one organization that is superseded by another. I mean, you can read a much more general principle from Trusco legitimately and, you know, that harmonizes with New York law. In those cases, you would have a cypre proceeding which only the holder of the funds can initiate, which is one of the problems with Swift, why Swift is just, I think, a bad decision. The court there is applying cypre principles. A cypre proceeding may only be commenced by the holder of the funds that are the subject of the cypre. And I think this opens the door to enormous problems. If you are going to say wills, gift instruments, and other documents can create or expand the issue. Why shouldn't the district court hold a hearing on the standing issue and take facts from, take evidence on the question what Hadassah's donative constituency is like to be able to make a ruling about whether this is an exceptional class or not. There is a record in this proceeding. I think you've seen it. It's about this thick. There are lots of instruments in that. The court had that in front of it. There are numerous donative instruments. Those are instruments that refer only to hack. There are gift instruments, every one of which gives Hadassah complete discretion, as Judge Calabresi noted, to make a gift or not. It's not just mere words. That's, in fact, the intention. And that's a requirement. Wouldn't it be of interest to an organization like Hadassah that gets a great deal of money from a great many people and gives it usually, although there is a statement of total discretion, exactly as these people suggest, to have the New York Court of Appeals speak again to this issue and tell us what precisely, what it means to have an individual interest, whether it means what was suggested by the presiding judge, what it means to have discretion in this tax situation, when they really want the attorney general and when they want to allow suits? Wouldn't that really, I mean, apart from this case, be something that would be useful to you to know as well? Hard to disagree with that as a matter of principle, but I don't think this case supports that. I think, I'll say again. No, I understand you think you can win the case regardless, but I'm just asking more generally, isn't this here an area where New York law is complicated? You look to New Hampshire, which has the same official law, and they have taken some quite clear decisions on it so that New Hampshire knows what it's doing. Wouldn't it be better just to get that settled? If New York wants, of course. If New York doesn't want, they can always say no. So flies in the face of Judge Meyers' caution in his Alco-Gravier opinion that there's a problem of vexatious litigation. I think this is a perfect example of it. If we've got to go through to the Second Circuit, then we've got to go to the court of appeals. This is a no? It is too bad that New York doesn't allow district courts to certify, but New York doesn't. All right. I think we have the arguments. Mr. Askin, as you have two minutes rebuttal. Thank you. Judge Calabresi, I agree 100 percent that this is an issue that perhaps we do need to get some input from the court of appeals. And similarly, Your Honor, I agree that we were not given an opportunity to create a full record at the district court level specifically because the district court decided that the only thing that mattered were Hadassah's chartering documents and closed the inquiry there. With respect to Trusco, I just wanted to make one point to Your Honor's question earlier about the attorney general. It's important to note that in Trusco, the attorney general was a party, and the attorney general objected to the intervention and said, no, no, this is my sole discretion. And over the attorney general's objection and over the respondent's objection, the surrogate's court allowed the intervener to come in. But again, those were circumstances very unlike yours where there was a one-to-one, there was a successor organization that had acceded to all of the rights of the prior hospital. Not in Trusco. No? I believe the facts in Trusco were that the intervener was not a successor organization, nor was the intervener mentioned in any chartering documents. Well, not in the chartering documents, but there was a contract that says the exceptions applies to Ellis Hospital given its contractual relationship with St. Clair's. It was a contract. It's unique because it was taking over St. Clair's operations. As I understood it, Ellis, in pursuit of this agreement, Ellis assumed the sole responsibility of providing hospital and other health care services previously provided by St. Clair's Hospital and has become the sole remaining hospital in Schenectady County. It was, in effect, the successor to, is that, that's incorrect? I think that is incorrect because as a matter of court, just as a technical corporate matter, there was no merger. I do think that the hospital became the only hospital that was servicing the county. But as a matter of corporate law, they were not connected to the prior hospital of St. Clair's. There was a merger, but the court said they assumed, pursuant to this agreement, they assumed the sole responsibility. But in any event, we don't have to go there. The point is I guess it's a little bit unclear what the circumstances were. All right. I think that's the point of all this law. All right. Thank you very much. Well argued. That concludes our oral arguments for today. We have one case on submission, Zimmerman v. Ernst & Young. And so the clerk will please adjourn court. Court is adjourned.